Thank you. So gentlemen, you have enjoyed those hard benches for several hours. I'm sorry about that. I'm sorry to go easy on you. What? I'm sorry to go easy on staff. No, no, no, no. We really should put some cushions or something on. I know, really. The final case on the calendar is 21-55464. Redd. Oops. Counsel, just give us one minute. Sure. Good. Okay. I'm all set. Looks like we're ready. Great. Good morning, Your Honors, and may it please the Court. Kareem Kentfield for the appellant, Stephen Redd. I'd like to reserve six minutes for rebuttal. Mr. Redd has been waiting 25 years to be appointed the Capitol Habeas Counsel. He is guaranteed under California law. To this day, Mr. Redd maintains his innocence. Yet more than a quarter century after his conviction, no attorney has even begun to investigate his habeas case. In the meantime, his claims have grown increasingly stale as witnesses have died and memories have faded, and the odds grow ever higher that he will die before any court even considers his case. The Due Process Clause does not permit this outcome. Now, there are several ways to view the due process violation here, but the most straightforward is to consider how the delays violate Mr. Redd's protected interest in habeas review of his conviction and sentence. Now, to be clear, the due process protection that Mr. Redd is invoking here is not a constitutional right to habeas counsel. Rather, it is the due process protection against egregious delay. Delay is a classic due process problem because it deprives you of your right to be heard at a meaningful time. And defendants don't deny that if the 25-year delay here is attributable to the state, then that is a clear due process violation. I was going to ask you about that. What is the source of the problem? Is it more a lack of funding or the lack of qualified counsel who are trained with adequate experience in capital cases and who are therefore available and willing to accept these appointments? Your Honor, as the district court recognized, our complaint alleges that the delays here are a result of defendants' policies and funding decisions made by both defendants and the legislature. And that's in line with the findings of state commissions that have specifically studied this issue and issued recommendations that have never been implemented. But I think it's... Does that mean the answer to the question is if they paid more, there would be more lawyers available? Or are they... that's what Judge Fulman is getting at. Are they out there? And it's a question of the state not funding? Because the statute seems to have some additional requirements besides funding. Like they have to be deemed certified. Yeah, which would require training and also, and I'm not sure where you get it, but also experience in maybe as an associate or second chair lawyer in handling capital habeas litigation. Yes, Your Honor. The state commission that studied this in 2008 specifically recommended that raising the compensation rate would attract additional qualified counsel. It's also true in California, as I understand it, that the California Appellate Project, and I don't know about the Habeas Resource Center, but I know the California Appellate Project, would basically co-counsel with non-criminal, with good lawyers who weren't necessarily experienced, but the experience was coming from the California Appellate Project, which was not doing the legwork, but which was supervising. And I know from personal experience that that worked out quite well. Is that true in capital cases? Yes, in a capital case. Your Honor, the— The California Appellate Project only deals with capital cases. No, but I'm trying to figure out whether or not, maybe we're going to take you too far afield, but doesn't there have to be one certified person on the case as opposed to somebody coaching? Your Honor, I do believe someone certified has to be on the case, but there's multiple ways that the state can provide counsel in these cases. So, for example, as Judge Berzon alluded to, the Habeas Corpus Resource Center, which is an agency within the judicial branch, provides counsel to a number of capital prisoners. And so one of the other recommendations of the state commission would be to increase the resources of that agency. 32 positions or something? It's capped, isn't it? That's right, Your Honor. All right. That's right, Your Honor, but I think it's also— I was just going to go on a different subject. Go ahead. Oh, yeah. I think it's important to step back and recognize that the district court held that there are specific actions that we've alleged that defendants can take to improve the situation. As one example— We know, and I don't want you to take too much time. I think it's more important to get to Judge Berzon's question. So, I would like to begin. It is your representation, and the reason I think you're focusing on the habeas protection under California law, for one thing, because the state has acknowledged that that is a liberty interest for federal purposes. You, as I understand it, read the Barnett case, and perhaps some others, as providing that once you agree to counsel, you can't get out of it. That's correct, Your Honor. That is the statement of the California Supreme Court in the Barnett decision, and defendants haven't denied that, that California law, to quote the California Supreme Court in Barnett, quote, specifies no right to withdraw an election of professional legal representation once made. And the California Supreme Court also indicated that there's no Faretta right under appellate law, and that this is analogous except at the outset. Exactly, Your Honor. The court held that there is no constitutional right to proceed per se in habeas, and it evaluated the statute itself and found no mechanism to revoke your election. But I think it's also important— For example, the footnote in Barnett that refers to Faretta is only with respect to the trial court, to rights in a trial court in the original trial and not thereafter, as a matter of California law. Your Honor, I believe that the decision makes it clear that when it analyzes Government Code Section 68662, which is the counsel appointment statute, that the initial decision is to either go pro se or accept counsel. And we can talk about why that decision, Mr. Redd, had no notice of what he was getting into. This is a different point, and this is whether once you make the election, can you change it. Exactly, Your Honor. And the Barnett decision looked at that statute and said that once you make that decision, there is no right to change your mind. But as a general—I'll ask the State this, but it's your understanding that the State agrees with that, the interpretation of Barnett and its statute. Your Honor, we raised it in our opening brief, and they didn't argue otherwise. But I think it's important to keep a couple other points in mind. The first is that whatever the Defendants' Counsel says today about what California law requires or allows, nobody ever made it clear to Mr. Redd over the last 25 years that he had this option to revoke his election. That doesn't seem very important. It's much stronger if, in fact, there is no such right. And it appears that Barnett says there's no such right. And I just want to check what the State agrees with. I agree it would be even stronger, Your Honor. But our argument is that the State has created a habeas system with a 25-year delay built in. It did not inform Mr. Redd that he was opting into that system. Well, that's a different question. It's whether when he opted in to begin with, he had noticed that it could go on for 25 years. One assumes not. I mean, the California Supreme Court itself, you know, seemed to think they were talking 10, 11, or 12 years, not 25 years. So, I mean, that leads to the line-drawing problem, which is, were we to say there was a problem here, what would we do with it, and how long is too much? Right. Well, Your Honor, this court and courts across the country have addressed that problem in numerous cases, and they have applied the Barker v. Wingo factors to evaluate delays. So, for example, in this court's Covey-Thurman decision, the court held that a four-year delay in a direct criminal appeal violated the due process clause under the Barker factors. But don't those deal with pretrial delays? No, Your Honor. Your Honor, this court and Covey-Thurman applied— I'm asking specifically Barker v. Wingo. Wasn't that a pretrial delay case? Yes, Your Honor. Barker was a trial delay case. But what eight courts of appeals, including this court, have held is that those same factors should be applied to evaluate delays in direct appeal. And so, and because of the analogy— But he's had his direct appeal. Your Honor, and in this case, he is arguing there's a delay in habeas, and every— He wants to extend Barker v. Wingo to collateral attack. Yes, Your Honor, which is what every court has done. My understanding is he doesn't want to extend Barker v. Wingo. He wants to use similar criteria for a determination of when the state-provided habeas liberty interest, essentially, has gone away because there's no way to have a habeas that is productive after a certain time period. That's exactly right, Your Honor. What the Third, Fifth, and Tenth Circuits have all held is that the concerns in habeas are analogous to the concerns from delay in direct appeal. And so, therefore, the same test should apply. And that's particularly true in California, which the U.S. Supreme Court in Martinez has explained makes its habeas review in many ways the equivalent of a direct appeal because it requires certain core claims like ineffective assistance of counsel and Brady claims, which other states adjudicate on direct appeal and moves them to habeas. What significance, and this is a really confounding case, the statute says that both the original one and the one enacted by initiative says that counsel is supposed to be appointed upon what? Upon the conviction or? Upon a finding that the defendant is indigent and has accepted the offer of counsel. But all after conviction, presumably. Yes, Your Honor, after sentence. And upon as a matter of, you don't say this, but the dictionary meaning of upon is pretty much immediately or soon. It would be upon the sentence of death, I think it says, right? I'm sorry, what? Upon sentence of death is what I think it says. Well, in the Judgment Center. Isn't it? No, I believe it says, this is Government Code Section 68662. It says, upon a finding that the capital defendant is both indigent and has accepted the offer of counsel, then the court shall appoint counsel. And I agree, Judge Berzum. But that's upon a sentence of death. That's the prerequisite. Yes, that is an additional prerequisite. Yes. And I would agree that the ordinary understanding of that is the court cannot make the finding and then wait 25 years. Well, but the really hard part of this is that it's more than that. That's supposed to be, when you do something upon something else happening, it means then. And then there are all these practicalities that cut in the other direction. And we have the states, I mean, as I understand part of the opposing argument, it's that the fact that the State Supreme Court, which was doing the appointment and interpreting the statute, recognized there was a problem but thought 10, 11, 12 years was okay, they never got to 25, and didn't like it but thought their hands were tied, is somehow part of what the State is promising you. I mean, they're trying to read that back into what the habeas protection is. And the question is, how much can we rely on the statute? What I read the statute to mean is, at that time. And California also basically requires that the habeas be filed very shortly with the district court, with the direct appeal, I don't know, six months later or something like that, right? Doesn't California require that the habeas be filed at about the same time as the direct appeal in the California Supreme Court? The practice in California is typically for prisoners like Mr. Redd to file initial habeas petitions in the California Supreme Court. I know that, but the reason for it is because there is a provision that the, maybe it hasn't been mentioned in these briefs, that the habeas is to be filed somewhere around the time that the direct appeal is filed, 90 days, something like that. That's mentioned in the briefs. Your Honor, I can't point you to a provision of law. My understanding is the motivation there is to toll the federal statute of limitations under EDPA. No, it is a requirement of the California Supreme Court, or it was. If it's not anymore, then it's changed. Well, Your Honor, in any event, I would agree with your reading of the statute, that upon required— And what do we do if we read the statute that way, and we say that's the liberty promise that's been made on habeas? But we know there's no way in the world it's going to happen. What do we do next? Well, two points, Your Honor. First, as the district court recognized, our complaint recognizes, our complaint alleges that there are specific steps defendants are not taking that could make it happen. For example, defendants have never issued the compensation standards necessary for any appointments to occur since 2016 when Prop 66 was passed. So if this Court declares there is a constitutional violation, it would be reasonable to assume that the defendants would at least take that step. But more generally, there is no authority suggesting that where a State has underfunded or mismanaged its resources, that that is a defense to a constitutional violation. And this Court addressed that directly in Covey-Thurman. So should we hold that the lawyer needs to be appointed upon the I.E., you know, within 180 days after the conviction, or something else? Your Honor, the only declaration we are seeking in this case is that a 25-year delay, which are the facts of Mr. Redd's case, violates due process. So that is all we are asking you to hold. And it would not be — and once that declaration is issued, it will be up to defendants to respond in good faith. And to go back to your previous question, I do think Covey-Thurman is on point, because there the State offered direct review, which it was not constitutionally obligated to do, and this Court recognized that a four-year delay in that process violated due process, even though it was caused in part by backlogged courts that had been underfunded. That that was not a defense to a constitutional violation. That is the cause of the constitutional violation. And that is true across numerous contexts. Counsel, one of the things that concerns me about this case is that the first-name defendant is the Chief Justice of the California Supreme Court. And theoretically, if we were to enter an order telling the Chief Justice, you must provide counsel and promulgate the schedule that you say they have not promulgated, the next step would be to issue an order to show cause as to why we should not hold the Chief Justice of California in contempt for not abiding by that directive. And I have some real heartburn about getting involved in that kind of management of the California criminal justice system. Your Honor, I want to be very clear. The relief we are seeking here is not what Your Honor just described. It is merely to declare that the ongoing 25-year deprivation of counsel violates due process. How do we avoid getting into this question on every case? You represent there are 363 similarly situated death row inmates that are being deprived of counsel, but I assume those numbers vary from case to case. So do you just want a bright line, we pick a number out of the air, 25 years, and declare that if it's 25 years or longer, that violates due process? But what do we do about the next inmate whose delay is 12 years? Well, Your Honor, to be very clear, we are just asking you to declare that on the facts of this case, there is a due process violation. But you filed a putative class action, have you not? The class hasn't been certified yet, but I assume Mr. Redd wants to serve as the class representative. Well, Your Honor, you're correct that the class has not been certified, and Mr. Redd may never move to certify because it would only slow down his entitlement to relief. And if he does certify, then any abstention concerns can, of course, be re-raised at that time. But, of course, one way the class might look like would be all prisoners who have been waiting, for example, more than 25 years, in which case the relief would be exactly the same. It would be a bright-line declaration that the delay in this case violates due process. I thought there was some order or directive that the oldest 20 cases were supposed to get their counsel appointed imminently, and this must be, is it the oldest or one of the oldest? Your Honor, that's right. Mr. Redd is on the list of the cases that have been waiting the longest. I believe it's 20. And wasn't there some directive that they're supposed to get appointed right away, but they weren't? Yes, Your Honor. When was that list compiled? I believe that the HCRC compiles the list of the 20 prisoners who have been waiting the longest for counsel, and then the next appointment has to come from that list, and Mr. Redd is on that list. And he's been on the list, presumably, for years? I'm not sure how long he's been on the list, but I believe it must be years because no counsel appointments have happened in five years. Could he bring a mandamus action before the California Supreme Court directing the presiding judge of the Orange County Superior Court to appoint counsel for him? Your Honor, defendants have never suggested that any vehicle like that is available, and in any event, there's no kind of exhaustion requirement for a 1983 suit. I understand that, but I'm trying to figure out what we can do to get Mr. Redd a lawyer. Have you not thought about that? Well, Your Honor, what you can do to get Mr. Redd a lawyer is to declare that there is a constitutional violation in this case. I understand that. I'm just asking, rather than asking federal courts to tell the California Supreme Court and other California courts how they should manage their affairs, if there is a less intrusive way to get to the same place by seeking some sort of relief in the California courts that you apparently have not petitioned for relief. Your Honor, I am not aware of any such vehicle, and I would also just note that the relief we are seeking here is far less intrusive than the relief this court already ordered in Covey Thurman, where it ordered the state appellate court to handle the appeal within 90 days or release the prisoner. But all we are asking for is the preliminary step of declaring that there is a constitutional violation. And that's the type of analysis courts across the country have uniformly performed, and not a single one has ever found an abstention concern. Counsel, are you familiar with Peralta, our decision in Peralta? Which case was that, Your Honor? I'm going to take that as a no. You're not familiar with Peralta. It's a 1983 suit regarding prisoners' Eighth Amendment rights, in which we allow that states are required to consider financial constraints. Not familiar, but fair enough. I'm sorry. That's fine. Any other questions at this point? No. Okay.  We'll hear from opposing counsel. Thank you, Your Honor. May it please the Court, Ray Cardozo representing the defendant jurists. I'd like to start with Judge Berzon's questions about In re Barnett, and then move to some of the points Judge Tallman raised. Barnett, one of the fundamental problems in this case, Barnett does not hold that there's no right to revoke your request for counsel. In Barnett, Did you argue that in your briefs? Hmm? Did you argue that in your briefs? This was a point raised for the first time in the reply brief, that he couldn't make the election. No. We've got the second footnote. So your point is, your response is? Yeah. Barnett, counsel was appointed, and they held when you are represented by counsel, we're not going to accept pro se filings as the rule that's applied in all cases. No, but what they said was. And then in footnote two, I'm sorry. Go ahead. Footnote two is attached to the discussion about what happens in trial courts. They go through a, the background is we recognize a right in trial courts because the Supreme Court requires us to do that. But in appeals, which we do not have a right in California, and then they have a second, at the end they say that in consideration of all the foregoing, the rule we adopt is this. The court will not file or consider a represented capital inmate's pro se submission to the extensive challenges or otherwise pertains to the legality of the death judgment. And then it goes on with footnote seven, which says consistent with our rule on appeal, which is no foratorite, we will file and consider a pro se motion regarding an inmate's representation, a Marsden motion, to the extent it is clearly labeled and limited to sentence. And Marsden, of course, is about changing lawyers, not about self-representation. So I think it's quite clear that you can have a foratorite in California at trial, you don't have one in appeal, and you don't have one in habeas once you've accepted counsel. But you've got to remember, collateral habeas proceedings are civil in nature. They also said that in a footnote in Barnett. And so they did not hold or rule that you cannot withdraw your right to self-representation and proceed pro se. And I want to start with the way they started. It began with an offer to proceed pro se or proceed with counsel, which clearly implies you can proceed pro se in these cases. Well, yes, but his point is that once the election is made, first of all, he didn't know that he was going to have a 25-year delay, as you know, and that once he's made the election, that he can't get out of it. And your response is, I guess, as to Barnett, My response is Judge Tallman's point. That's a point he needed to raise in the state court under state law, because he's never done that. He's never tried to do that. And Barnett didn't hold that he can't. But what do you actually think would happen? I mean, isn't Barnett quite clear? I mean, I guess they could change the rule. But in terms of what Barnett says, it says that the, although these provisions contemplate that a capital inmate may decline her offer of counsel at the outset, so long as he or she fully understands the legal consequences of such a decision. They specify no right to withdraw an election of professional legal representation once made. And then they go on to set out, so this is our rule. And they say exactly what the rule is, which is you can file, the only thing you can file is a Morrison rule proceeding, and it has to say it's a Morrison proceeding clearly when it's filed. But it's unambiguously in the context of someone who has had counsel appointed and is being represented by counsel, a request when the court has not appointed counsel yet is a fundamentally different question. And that question wasn't decided in Barnett, and he's never raised that in the state courts. Well, if you don't have a Faretta right, then you don't have a Faretta right. But if you don't have a lawyer, then why would it be a bar to say I want to represent myself? This is fundamental in the initial offer. The initial offer is you can proceed in pro se, or we can appoint counsel. They haven't yet appointed counsel. You can go back and say, okay, I'll proceed in pro se, which we know from the Supreme Court is constitutionally sufficient. Sorry, from what Supreme Court? From what Supreme Court? The Pennsylvania v. Kennedy decision held that that's constitutionally sufficient. I understand what you're saying. And they did it again in the Murray v. Durantano case, which comes back to the vexing conundrum when there's no – when the test this Court's precedents or the Supreme Court's precedents are clearly articulated, when there's no constitutional right to the benefit that the state has conferred voluntarily, federal constitutional right, the analysis focuses on does the state right in question guarantee you a substantive end in and of itself, or is it a procedure that's a means to facilitate that end? That's what the district court ruled. I find the cases applying that standard.  Well, again, the Supreme Court held in both Pennsylvania v. Finley and Murray v. Durantano. You conceded that several times in your brief, that the right to pursue the California guarantee of a habeas is a protected liberty interest. Yeah. I want to separate two things. We conceded it was theoretically possible to him to raise a liberty interest in that right. Right. Okay. That's all I was trying to get at. But one thing I want to be clear of, the Supreme Court has held a state doesn't even have to provide collateral habeas. That's a different point, and we're just trying to make sure that you got that correct. Yeah. So, yeah, I acknowledge there's a liberty interest in the habeas, but then the provision of counsel to pursue that liberty interest falls exactly on the other side of the line, what this Court has repeatedly said. We carefully distinguish between procedures meant to vindicate the substantive I don't really understand how that works, because, for example, you have these cases about the procedures to protect good time credits, right? And they say, well, the good time credits are substantive, and the procedures to protect them are themselves, therefore, protective, right? So here, if you have, if the habeas is a protected liberty interest, then why isn't the, and I want to get to a property interest a little later, then why isn't the having an attorney to pursue the habeas protecting a substantive liberty interest? Because in all of the cases that have drawn this distinction between the procedural protection and a state law right that guarantees the substantive right, good time credits, parole, when you meet the state's criteria, then you get your liberty. But the challenge is to the procedures in those cases. The challenge is to how you determine whether you meet the criteria. That's what's going on here. The challenge, I mean, even if you regard an attorney as a procedure, which I'm not sure is true. It seems to me it's a substantive right in itself. But leaving that aside, and it doesn't seem similar, for example, to the two-lawyer case or anything where you have a lawyer, but leaving aside whether it is self-substantive, once you agree that the habeas is a substantively protected liberty interest, the having a lawyer to pursue it has exactly the same relationship to the substantive right as the procedures to pursue good time credits. No? Well, it fits the two-lawyer case because the second lawyer in Bonin v. Calderon was a voluntary state law, not federally constitutionally compelled right that the state provided, which is the equivalent of once the Supreme Court holds that the state doesn't even need to provide collateral habeas review and then further holds that you don't have to provide a lawyer for habeas review as a matter of federal constitution, then the state's provision of an offer to provide a lawyer is equivalent to the state's offer to provide a second lawyer. But if it's a second lawyer, what if it was no lawyer? What if they said you have a right to appeal protected by California law? You also have a right to have a lawyer under California law for the appeal, but the lawyer isn't provided. Then there's no right to that lawyer? Well, this comes to the other distinction the Supreme Court drew, that the second lawyer in Bonin is a trial where the protections of the Constitution are at their highest. And then Pennsylvania feudally distinguishes your right to a lawyer in your one appeal as a matter of right. Well, I understand you have no federal right to an appeal, to a appellate lawyer, but I want to know whether you have, when you do have a state-specified, shall-be-appointed right to a lawyer, why isn't that a liberty interest protecting the right to pursue habeas? Because like in Bonin, the two-lawyer case, and in James, the parental notification case, it is a procedural right attendant to the underlying liberty interest. So you would say then in Bonin that if the state said you have a right to a lawyer to pursue a direct appeal and didn't provide that lawyer, one lawyer, not two lawyers, the first lawyer, you have a right to pursue the appeal, you have a right to have a lawyer, but we're not going to give you the lawyer, that the first lawyer would not be protecting the substantive right to a direct appeal? I wouldn't say that because the Supreme Court has infinitely, and in Murray v. Girentano, carefully distinguished direct appeal from habeas. So there's sort of a hierarchy of due process interests. So you're relying now on, to try to make this distinction that Judge Berzon is valiantly trying to get you to make, your position, I think, is that there's a diminished interest post-conviction. Is that it? I mean, post-season. Yeah, once you've had a trial and conviction and all the penalty of trial rights and a direct appeal with an appointed lawyer, which is also... Right, so once the direct appeal is completed, then you're saying there's a diminished interest. Is that it? Yes. And so that's how you distinguish and decide that in this particular circumstance, this becomes a procedural right as opposed to a substantive right to vindicate the substantive right in the first place, the habeas right. Is there an interaction here with the... Excuse me. That's right. There's two pieces of it. One is it's a diminished interest, and the second is that the right is a means to an end. It's not the end itself. Right, and that's what Judge Berzon has been trying to get you to explain. Why not? How do you distinguish it in the good time cases? And I think what you're really relying upon is that it's post-direct appeal, so there's a diminished... Yeah, but also in the good time and other cases, when the criteria are met, you obtain a liberty. Am I wrong that the challenge in those cases was to the criteria? It was a procedural challenge in those cases, and the question was whether the procedures were protecting a substantive right. So to say that because if the criteria are met, you get the substance, that doesn't do anything. Here, if the criteria for pursuing your habeas, i.e., having a lawyer are met, you get your habeas, so I don't see the distinction there. You don't win, but you get the habeas. The distinction is what you get is more process. You get a lawyer to help you with the habeas process. You don't get a reduction in your sentence. You don't get good time credits. The problem in the good time credit cases is they're not applying the mandatory criteria that you have to determine the credits, which means you're not getting your determination that's necessary to set the sentence or conviction in the first place, which is a fundamental distinction. All right, what about the property interest? You say there's some metaphysical property interest. Now, having a lawyer has monetary value. I mean, it's actually, it's certainly a benefit, and it is monetarily, I mean, that's the way we're talking about it. The whole problem here is that it costs money, and so not having it certainly seems like a property interest. And the delay diminishes the value of the lawyer. Right, and the delay diminishes the value of the lawyer. But the problem with the property interest analysis is you have to take up all of the state law to determine it. That's not generally the way the procedural due process works. Loudermill and those cases have not allowed the state to say, well, we promise them some things, but we also don't give them the hearing, and not having the hearing is part of the definition of what the right really is. They say, no, no, no, you can't do that. You have to look at what the, you look at the rights separately, and then you decide whether it's being protected. You can't, and especially here, where, as I was saying before, the statute says it's supposed to be appointed upon, which is very specific. I mean, as a word in the English language, it means then, at that time. And it's certainly not happening. And now we are 25 years down, and what was supposed to have a certain amount of value 25 years ago has clearly very diminished value in the sense that the likelihood of being able to find the witnesses, of the lawyer being able to provide the same services has to be greatly diminished. So why isn't that an eating into a property interest? So the questioning went back and forth between property interest and procedural due process, which are two different things. With a property interest, you have to take up all that the state law has provided. I'm saying that you don't. That's the way the courts determine in general whether there's a property interest and a benefit, or, say, in a job, if it says you're entitled to certain protections in your job, you won't be fired except with due cause, just cause. You don't then read into that statement for purposes of deciding whether there's a property interest or just the fact that no hearing is provided. You're saying, well, that's due process, but the due process here is not having the lawyer, is what they're saying. So I don't really understand why you can read everything, essentially everything that the state has done to not provide what it's promised to provide. It is promised to provide an attorney upon the appointment, or elsewhere it's promised to do so at the time of the conviction or as soon thereafter as possible, and it's done neither of those things. Because the state law in question quite clearly does not, quite clearly says we're going to do this by appointing counsel who are willing and able to take the cases. That's very much as part of the state law as the part they're emphasizing. Where is that in the state statute? The standards that say the competency requirements and the fact that there is no mechanism in the law for counsel. It did not create a public defender's office to handle these cases. Well, that's what's not there. That's not what is there. But that's the limitation on the law and the limitation on inferring a property interest. They did not create a pool of attorneys. They didn't even put in that law any time commitments. There's a policy statement that it should happen at a certain time, but we know from this jurisprudence that should is not a... Don't say should. We have some case law in the Ninth Circuit that says should doesn't mean shall, but this is shall, it's not should. But it's a state law, and the California Supreme Court has already interpreted it as not imposing a time limitation. The California Supreme Court has interpreted its own law, and that part is binding. I'm sorry, where is that? In the Sanders case, I believe it was. Let me make sure I understand your answer. When you say we have to look at all of what state law provides, is your point there that it's more than just the appointment of a lawyer? It's a lawyer who is trained, who has experience in capital cases, and who's willing to undertake the appointment at the rates that we're offering? Because the explicitly mandatory language that's the second part of the analysis, the Supreme Court interpreted that in the Kentucky Department of Corrections versus Thompson to say what I'm saying, you have to look at because the law said the inmate had a right to visitation. But then there were other pieces that qualified that right, and that's why they said... Are you familiar with the way the California Appellate Project is operated? With what? The California Appellate Project? My understanding is they are appointed as counsel. They are fully qualified. They then go find some very good lawyers who are not criminal lawyers, and I'm saying this from experience because I did it. So there is a qualified lawyer who is supervising, and they find other lawyers who are highly qualified lawyers, even if not criminal lawyers, and it works out quite well. On the direct appeals, which also have problems, I know, in terms of finding people, but there are ways to do this. The fact that the requirements are in the statute doesn't mean that you can't put teams together and get this done. Oh, absolutely, but this highlights one of the vexing nature of this problem, and Judge Tallman made a comment about this. In the commission report in 2008 that recommended revisions, they pointed out that when they publicized the standards of what they were going to pay and so on, one lawyer said, I'll take these appointments, even with the California Appellate Project 1. Michael Millman, who was the head of the California Appellate Project, didn't wait for people to come. He called them up and he said, would you do this? And they did it. I did it. But that's not happening on Moss because the courts are not unwilling to make the appointment. They don't have anyone raising their hand saying, I'll take the case. They promulgated the standards, but then very few people responded. Is that your point? When they did before. So one of the comments was, well, since they shifted this around in Prop 66 and moved it to the trial court, they haven't promulgated new standards. But the last time they promulgated standards, no one raised their hands. And it's a problem because these are tough, tough cases. I understand why it's tough to recruit lawyers. And it gets back to your point, Judge Tallman, about the defendant is the Chief Justice of California and her influence and control. If you just look at the things the district court said, well, these are the kinds of things. Most of the problem here is funding. This report took on this issue in profound detail. Counsel, you're over your time. The district court made findings that there are things that could be done by the defendants. Are you contesting that? No, I'm pointing out that those are just a very small part and have already proven to be incomplete and inadequate. And also they fall right into what the cases say, the extension cases say, we shouldn't be doing. We shouldn't be requiring a state court jurist, federal courts, giving those kinds of orders to state court jurists, the very things the district court ticked off. We appreciate your argument. Thank you very much. But you are significantly over time, and we've read your briefs. Thank you. We'll hear from opposing counsel. Your Honor, let me begin with the last point. Our complaint explains that as the 2008 commission report reported, that a critical part of the problem here is that compensation standards have not been set high enough to attract enough attorneys. You've made that point. We understand your point. But I just want to add that that is within defendant's control. That is what our complaint alleges. The problem is, is it within the Chief Justice's control? Yes, Your Honor. The district court recognized the Chief Justice as the head of the Judicial Council. The court recognized there are some things she could do, some levers that could be pulled. We don't really know what would happen, if it would make a difference, if it would even result in one more lawyer. So you're down to about a minute and a half. Thank you, Your Honor. Your Honor, if I might address the liberty interest in counsel. Please. This Court's test is, does the right at issue protect a substantive end? Now, opposing counsel has said that the test has to be that if you meet the State's criteria, you get your liberty. But we know that's not right, because this Court's decision in Carlo v. City of Chino, cited in our brief, is directly contrary and I think is right on point. In that case, the State guaranteed you a phone call when you're arrested, and the Court held that established a liberty interest in the phone call because you need the call to call your attorney who can gather the evidence to prove your case. And so there was a right in the phone call, not because it was ultimately achieving your liberty, but because it was an important means towards that end. And so if the right to call your attorney creates a substantive end, then certainly the right to have an attorney in the first place does as well. And that distinguishes this case from Bonin and James. And in fact, Bonin and James already tell us the answer here, because in Bonin, the Court held that the right at issue was merely procedural, because speaking through two attorneys instead of one at closing argument was very unlikely to make any difference. But the Court specifically contrasted that procedural right with the substantive right to have an attorney, which is the very right at issue here. So Bonin already establishes the critical difference. And of course, having an attorney in habeas, we all know, is crucial to obtaining Finally, Your Honor. I want to go back to the Barnett question briefly. The response of your opposing counsel was that Barnett dealt with someone who actually had appointed habeas counsel. As a technical matter, your client here, is there a technical lawyer appointed, somebody filed a shell petition. He agreed to have representation. Somebody filed a shell petition. Then what? That person withdrew, or what? Your Honor, that was the California Appellate Project. And are they still technically his lawyers? No, Your Honor. So he's technically unrepresented now. That's right, Your Honor. So why isn't your opposing counsel right that Barnett really has nothing to do with this? Your Honor, Barnett said that once you accept the offer of counsel, there is no mechanism in the statute and there is no right under the Constitution to change your mind. With regard to the fact that you want a lawyer and you don't have a lawyer. But, Your Honor, the Supreme Court in Barnett laid down a blanket rule. But I think it's important to remember that our argument does not depend on Barnett. Because even if he had the right to change his mind, there was never a moment in time where it was clear to him he was going to have a 25-year wait. For example, in 2013— Clear now so he could tomorrow, I suppose, file a motion with the California Supreme Court or maybe we're now talking about the Superior Court to proceed pro se. Your Honor, at this point we are well past the point of a serious constitutional violation where the state has delayed his habeas review by 25 years. There's serious prejudice to his case from witnesses dying, memories fading, and he can't— But isn't the answer to the question that there's nothing to prevent him from filing a request tomorrow, as Judge Berzon suggests? There's nothing preventing that, but that would be a wholly inappropriate remedy where the state has violated his due process rights by inflicting a 25-year delay. But he wants a lawyer. I mean, suppose, miraculously, he files his motion and the Superior Court says, yes, here's your attorney. Isn't that what you're asking for here? You want us to get him a lawyer. Your Honor, Mr. Redd has repeatedly written to the California Supreme Court and asked him to appoint him counsel. So he has asked for this many times. He even went into federal habeas in an attempt to get review there, but he was denied for failure to exhaust. And I think it's very notable that when he went to the U.S. Supreme Court, the State of California represented in its brief to defeat cert that the appointment of counsel would finally be coming in due course, which, as Justice Sotomayor explained, meant soon. So now they cannot turn around eight years later and say, well, he should have known better than to believe that. You know, he should have tried harder to go pro se. They have to live up to their promises. It's asking far too much of a pro se prisoner. Thank you for your argument. No further questions, I take it? No. Thank you all for your arguments. We'll stand and recess for the day. Please rise.
judges: BERZON, TALLMAN, CHRISTEN